FILED
2014 Mar-31  PM 12:44
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA MIDDLE DIVISION

| | | |
|---|---|---|
| **RACHAEL WHITE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.** |
| | ) | **4:12-CV-0808-AKK** |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of Social** | ) | |
| **Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

Rachael White brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). This Court finds that the Administrative Law Judge ("ALJ") failed to apply the proper legal standards. Therefore, for the reasons explained below, the court will **REVERSE** and **REMAND** the decision denying benefits for further proceedings.

## I. Procedural History

White filed her applications for Title II disability insurance benefits and Supplemental Security Income on December 16, 2008, alleging a disability onset date of March 1, 2007, due to fibromyalgia, lupus, gastroparesis, and migraines. (R. 10, 140-46, 159). After the denial of her applications on April 10, 2009, (R.

80-94), White requested a hearing, (R. 96).  At the time of the hearing on October

6, 2010, White was 39 years old, had a high school diploma with two years of

college, and past relevant light and skilled work as an administrative assistant,

light and semi-skilled work as a furniture salesperson, pharmacy technician, and

customer service representative, and sedentary and skilled work as a secretary.  (R.

70-72).  The ALJ denied White's claim on February 16, 2011, which became the

final decision of the Commissioner on January 9, 2012, when the Appeals Council

refused to grant review.  (R. 1-24).  White then filed this action pursuant to section

1631 of the Act, 42 U.S.C. § 1383(c)(3).  Doc. 1.

## II.  Standard of Review

The only issues before this court are whether the record contains substantial

evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v.*

*Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the

correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988);

*Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. §§ 405(g)

and 1383(c) mandate that the Commissioner's "factual findings are conclusive if

supported by 'substantial evidence.'"  *Martin v. Sullivan*, 894 F.2d 1520, 1529

(11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the

evidence, or substitute its judgment for that of the Commissioner; instead, it must

review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### III.  Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairments which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I). A physical or mental impairment is "an impairment that results from anatomical, physiological, or

3

psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. § 404.1520(a)-(f).  Specifically, the Commissioner must determine in sequence:

(1)     whether the claimant is currently unemployed;

(2)     whether the claimant has a severe impairment;

(3)     whether the impairment meets or equals one listed by the Secretary;

(4)     whether the claimant is unable to perform his or her past work; and

(5)     whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of 'not disabled.'"  *Id*. at 1030 (citing 20 C.F.R. § 416.920(a)-(f)).  "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

Lastly, where, as here, Lloyd alleges disability because of pain, she must

meet additional criteria.  In this circuit, "a three part 'pain standard' [is applied]

when a claimant seeks to establish disability through his or her own testimony of

pain or other subjective symptoms." *Holt v. Barnhart*, 921 F.2d 1221, 1223 (11th

Cir. 1991).  Specifically,

> The pain standard requires (1) evidence of an underlying medical
> condition and either (2) objective medical evidence that confirms the
> severity of the alleged pain arising from that condition or (3) that the
> objectively determined medical condition is of such a severity that it
> can be reasonably expected to give rise to the alleged pain.[1]

*Id*.  However, medical evidence of pain itself, or of its intensity, is not required:

> While both the regulations and the *Hand* standard require objective
> medical evidence of a condition that could reasonably be expected to
> cause the pain alleged, neither requires objective proof of the pain
> itself.  Thus under both the regulations and the first (objectively
> identifiable condition) and third (reasonably expected to cause pain
> alleged) parts of the *Hand* standard a claimant who can show that his
> condition could reasonably be expected to give rise to the pain he
> alleges has established a claim of disability and is not required to
> produce additional, objective proof of the pain itself.  *See* 20 CFR §§
> 404.1529 and 416.929; *Hale* at 1011.

*Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991) (parenthetical

information omitted) (emphasis added).  Moreover, "[a] claimant's subjective

testimony supported by medical evidence that satisfies the pain standard is itself

---

[1]   This standard is referred to as the *Hand* standard, named after *Hand v. Heckler*,
761 F.2d 1545, 1548 (11th Cir. 1985).

sufficient to support a finding of disability." *Holt*, 921 F.2d at 1223. Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, the ALJ must find him disabled unless the ALJ properly discredits his testimony.

Furthermore, when the ALJ fails to credit a claimant's pain testimony, the ALJ must articulate reasons for that decision:

> It is established in this circuit that if the [ALJ] fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the [ALJ], as a matter of law, has accepted that testimony as true. Implicit in this rule is the requirement that such articulation of reasons by the [ALJ] be supported by substantial evidence.

*Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987). Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if the ALJ's reasons are not supported by substantial evidence, the court must accept as true the pain testimony of the plaintiff and render a finding of disability. *Id*.

## IV.  The ALJ's Decision

In performing the Five Step sequential analysis, the ALJ initially determined that White had not engaged in substantial gainful activity since March 1, 2007 and therefore met Step One. (R. 13, 23). Next, the ALJ acknowledged that White's severe impairments of "gastroparesis, lupus, and low back pain" met Step Two. (R. 18, 23). The ALJ then proceeded to the next step and found that White did not satisfy Step Three since she "does not have an impairment or

6

combination of impairments that meets or equals the criteria of an impairment listed in Appendix 1, Sub part P, 20 CFR Part 404." *Id*. Although the ALJ answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, the ALJ proceeded to Step Four, where he determined that White has the residual functional capacity ("RFC") to "perform light work that allows for occasional bending and stooping; no driving; a sit/stand option; occasional climbing; no lower extremity pushing and/or pulling; and no upper extremity pushing and/or pulling." (R. 23). In light of White's RFC, the ALJ determined that White was "able to perform past relevant work as an administrative assistant and customer service representative." *Id*. Consequently, the ALJ determined that White is not disabled. (R. 23-24). It is this finding that White challenges.

## V.  Analysis

White contends that the ALJ failed to properly articulate good cause for rejecting the opinions of her treating physician, and failed to properly evaluate the credibility of her testimony of disabling symptoms. The court discusses each contention in turn below.

A.      Dr. Tuomah Sahawneh's opinion

On March 18, 2010, Dr. Sahawneh noted that White had lower back pain with recurrent exacerbations, (R. 534), and opined that White "is unable to obtain

employment, especially since she is unable to afford adequate evaluation with needed MRI," (R. 524).  Dr. Sahawneh also reported on a physical capacity evaluation on September 3, 2010 that White could sit for two hours and stand and walk for zero hours in an eight-hour workday, (R. 652), continuously experienced moderately severe pain, (R. 654), displayed muscle spasms and spinal tenderness as objective signs of her pain, *id*., and that White's condition would last twelve or more months, (R. 653).  White contends that Dr. Sahawneh's opinions support her disability claim and that the ALJ failed to articulate good cause for rejecting them. Doc. 8 at 5.

When determining how much weight to assign to a medical opinion, the ALJ must consider several factors including: (1) whether the doctor has examined the claimant; (2) whether the doctor has a treating relationship with the claimant; (3) the extent to which the doctor presents medical evidence and explanation supporting his opinion; (4) whether the doctor's opinion is consistent with the record as a whole; and (5)  whether the doctor is a specialist. 20 C.F.R. §§ 404.1527(c), 416.927(c). The ALJ will give a treating physician's opinion controlling weight if it is well supported and not inconsistent with other substantial evidence in the record:

> If we find that a treating source's opinion on the issue(s) of the nature
> and severity of your impairment(s) is well-supported by medically

> acceptable clinical and laboratory diagnostic techniques and is not
> inconsistent with the other substantial evidence in your case record,
> we will give it controlling weight.

20 C.F.R. § 404.1527(c)(2).

In considering whether an ALJ has properly rejected a treating physician's opinion, "[t]he law of this circuit is clear that the testimony of a treating physician must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). "Good cause" exists when the evidence does not bolster the treating physician's opinion, a contrary finding is supported by the evidence, or the opinion is conclusory or inconsistent with the treating physician's own medical records. *Id*. If a treating physician's opinion is rejected, "[t]he ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error." *Id*.

Here, the ALJ rejected Dr. Sahawneh's opinions for three reasons. First, the ALJ found that White "sought treatment for chronic pain and that Dr. Sahawneh suggested that she has resulting limitations greater than determined in this decision. The documentary record, however, fails to corroborate that degree of restriction on a consistent basis." (R. 21). To support this finding, the ALJ cited Dr. Ryan Aaron's April 26, 2009 consultative physical examination:

As previously discussed, the consultative physical examination was basically normal other than some tenderness to palpation at two locations  of her right trapezius and left trapezius, as well as some tenderness to palpation at the right greater trochanter and the left superior patella (Exhibit B11F). The examiner, Dr. Aaron, also noted full range of motion in the lumbar spine and in the extremities. Dr. Aaron further observed that pain behaviors were not demonstrated and that the claimant is independent with respect to personal care and cooking.

(R. 21).  However, Dr. Aaron's examination is limited to a single occasion and does not account for any subsequent deterioration White may have experienced and, in that respect, does not contradict Dr. Sahawneh's opinions.  In fact, Dr. Aaron's findings in April 2009 are consistent with Dr. Sahawneh's examination notes in 2009.  Specifically, on January 8, 2009, White reported to Dr. Sahawneh that she woke up with low back pain, but had suffered no injury, trauma or radiculopathy.  (R. 487).  On March 2, 2009, White reported to Dr. Sahawneh that her back pain was much better. (R. 483).  The difference then is on alleged events that occurred afterwards.  Because the ALJ failed to consider the deterioration in White's condition after 2009, the ALJ's reliance on Dr. Aaron's opinion as a basis to reject Dr. Sahawneh's opinions in 2010 may be improper if, in fact, Dr. Sahawneh based his opinions on treatment notes that show that White's back pain worsened.

Prior to January 2010, the treatment records from Dr. Sahawneh document limited complaints of back pain.  (R. 431-478, 522).  However, beginning on January 25, 2010, and monthly thereafter, White visited Dr. Sahawneh complaining of back pain. (R. 520-521).  Dr. Sahawneh's notes consistently reference muscle spasms and vertebral tenderness in White's lower back and showed no general improvement in White's condition.  *See* R. 520-521; 670-671; 656-669; 674. Significantly, during these visits that began over eight months after Dr. Aaron's examination, Dr. Sahawneh conducted physical examinations and found muscle spasm and vertebral tenderness at each of White's monthly visits between January and October 2010.  (R. 655-671).  White's last visit to Dr. Sahawneh occurred four days prior to her ALJ hearing.  Put differently, the treatment records establish White's pain complaints, which were confirmed by objective exam findings, increased in frequency and severity after Dr. Aaron's consultative examination.[2]  Consequently, the ALJ's reliance on Dr. Aaron's

---

[2]  White also sought treatment in emergency rooms beginning on February 20, 2010, when White arrived at the St. Vincent's Blount Hospital emergency room via ambulance complaining of lower back pain. (R. 634). The notes show that White requested pain medications, stated she had run out, (R. 629), had taken Soma and Xanax prior to arrival, had slurred speech and was cursing heavily, (R. 629), and that when the hospital concluded that White's condition was not an emergency, White "walked very easily" and "fast paced" while cursing as she left the emergency room, (R. 630).  While this visit does not help White's credibility, no similar issue existed during White's next emergency room visit two weeks later. On this occasion, White visited Cooper Green Hospital complaining of pain in her back, hip, and leg and reported a six month history of back pain that had worsened during the two previous weeks and radiated into her left leg. (R. 588). A physical examination of White's neck found

11

examination to reject Dr. Sahawneh's opinions rendered months later was unreasonable.

The second reason the ALJ gave for failing to credit Dr. Sahawneh's opinions is that "there is indication of exaggeration on the claimant's part, which further casts doubt on the reliability of her allegations and Dr. Sahawneh's medical opinion." (R. 21). The ALJ described that exaggeration as follows:

> St. Vincent's Blount records reflect treatment for chronic back pain on February 19, 2010, but they also indicate that she was seeking pain medication the next day for pain at an alleged 10/10 intensity (Exhibit B17F). The physician indicated her condition was non-emergent, sent her home, and observed that she left the emergency room cursing while walking very easily and fast-paced.

(R. 21). The medical records from February 2010, discussed *infra*, *see* n. 2, lend support to the ALJ's finding that White exaggerated her symptoms. However, this fact does not fully diminish the objective findings of muscle spasms and spinal tenderness Dr. Sahawneh observed on separate occasions, including after the February 2010 emergency room visit at issue. Furthermore, Dr. Sahawneh based his Physical Capacity Evaluation (PCE), as instructed, "on [his] clinical evaluation

---

limited range of motion, with muscle spasm, and paraspinous muscle tenderness. (R. 589). An examination of her back showed an abnormal straight leg raise test on the left. (R. 589). Cooper Green staff diagnosed White with sciatica and prescribed Robaxin, Ultram, and Prednisone for pain. (R. 589-590). The straight leg raise (SLR) test is used to diagnose sciatica. "In sciatica, flexion of the hip is painful when the knee is extended, but painless when the knee is flexed. This distinguishes the disorder from disease of the hip joint." *Dorland's Illustrated Medical Dictionary* 1525 (28th Edition).

of the claimant and/or test results." (R. 652). In *Hale v. Bowen*, 831 F.2d 1007, 1012 n.7 (11th Cir. 1987), the court found a PCE form that "instructs the physician to complete the form based on the physician's 'clinical evaluation of the claimant and other testing results,'" represents the doctor's "own professional assessment of [the claimant's] capacities and limitations." Therefore, the ALJ must assume that Dr. Sahawneh's opinions represented his clinical judgment about the intensity and vocational impact of White's symptoms. As such, standing alone, White's exaggeration of symptoms on one occasion does not provide good cause for rejecting Dr. Sahawneh's opinions.

The ALJ's third reason for rejecting Dr. Sahawneh's opinions relates to White's failure to take prescription medications for her pain: "Additionally, the claimant testified that she only takes prescription medication for her gastrointestinal problems, which further indicates that her pain allegations are not as serious as alleged, and that Dr. Sahawneh's opinion is not well supported." (R. 21). As the Commissioner concedes, this determination was inaccurate because White, in fact, sought and received prescription medication for her hip and back pain. Doc. 9 at 10. Therefore, this articulated reason for rejecting Dr. Sahawneh's opinions is not supported by substantial evidence.

Taken together, the ALJ's articulated reasons for rejected the treating physician's opinion fail to provide the requisite good cause required. As the court discussed previously, Dr. Sahawneh's opinions were not conclusory or inconsistent with his treatment records, and his objective findings provide support for his opinions. Significantly, Dr. Aaron's consultative examination is consistent with Dr. Sahawneh's treatment notes from early 2009, and, because of its temporal limitations, does not constitute substantial evidence contradicting Dr. Sahawneh's opinions rendered in 2010. Finally, White's one-time exaggeration of her symptoms in the emergency room does not significantly call into question Dr. Sahawneh's opinions, which he formed based on multiple clinical evaluations of White's condition, including assessments completed after the emergency room visit. Therefore, the ALJ erred in not giving "substantial or considerable weight" to the opinions of Dr. Sahawneh. *Lewis,* 125 F.3d at 1440. This failure requires reversal and remand so that the ALJ can properly consider Dr. Sahawneh's opinions.

B.    The ALJ's credibility determination

White challenges the ALJ's finding that the evidence as a whole did not support a finding that White's objectively determined medical conditions were of such severity that they could reasonably be expected to give rise to disabling

limitations. (R. 21).  According to White, the ALJ failed to properly evaluate her

testimony of disabling symptoms by ignoring "the voluminous medical records

which document the severity of White's gastrointestinal problems which required

numerous hospitalizations for vomiting, nausea and dehydration," and medical

records documenting the consistent treatment she sought for her back pain.  Doc. 8

at 10-11.

### 1.  *Gastrointestinal impairment*

The ALJ listed several reasons for discrediting White's testimony of pain

related to White's gastrointestinal impairments.  Specifically, the ALJ concluded

White's "condition improved in 2008 with a proper diet and then later stabilized,"

(R. 20), that White's medical visits in 2009 and 2010 were "mostly related to

headaches, back pain, and hip pain," *id*., and that Dr. Sahawneh "indicated that

mainly [White's] chronic back pain affects her ability to work," *id*.  Consequently,

the ALJ found that White's gastrointestinal condition "does not prevent her from

performing work activity on a sustained basis (with normal breaks) within the

parameters of the below-stated residual functional capacity." (R. 20-21).

Substantial evidence supports this finding because although the medical records

demonstrate that White suffered from significant gastrointestinal symptoms during

late 2007 and early 2008, the medical visits after early 2008 show that White

15

rarely complained of significant gastrointestinal symptoms. In fact, even Dr. Sahawneh noted during a hospitalization on April 21, 2010 that although White had a history of gastroparesis with severe nausea and vomiting at times, she had recently "been stable and asymptomatic." (R. 595). Based on this record, the ALJ committed no error with respect to the gastrointestinal ailments.

    2.    *Back pain*

The ALJ rejected White's testimony regarding her back pain for the same reasons the ALJ rejected Dr. Sahawneh's opinions: i.e. that Dr. Aaron's April 2009 consultative examination findings did not support White's testimony, that White exaggerated her symptoms during the emergency room visit in February 2010, and that White took no prescription medications for her back pain. (R. 21). As discussed, *supra*, the ALJ's findings are not supported by substantial evidence. *See* section IV.A.

The Commissioner argues that the ALJ's erroneous finding regarding the prescription pain medication constitutes harmless error. Doc. 9 at 10-12. The cases the Commissioner cites support finding that an ALJ's erroneous determination is harmless when other evidence supports his decision. *See Majkut v. Comm'r of Soc. Sec.*, 394 F. App'x 660, 665 (11th Cir. 2010) (finding the ALJ "relied heavily on other evidence" to find the claimant could do light work); *Vesy*

*v. Astrue*, 353 F. App'x 219, 224 (11th Cir. 2009) (finding the ALJ's erroneous statement that the claimant had not requested any bathroom breaks during the hearing was harmless because her "subjective testimony was inconsistent with the record"). The Commissioner also cited a case finding an erroneous statement by the ALJ harmless because "the record d[id] not indicate that it affected the ALJ's decision." *Carson v. Comm'r of Soc. Sec.*, 300 F. App'x 741, 743 (11th Cir. 2008). The court does not have to reach this issue because the ALJ's mistaken belief that White did not take prescription pain medications prevented him from properly considering White's use of pain medications as required by the regulations. *Moore v. Barnhart*, 405 F.3d 1208, 1214 (11th Cir. 2005). Because the court is unable to determine whether the ALJ would have found White's testimony not credible if he had properly considered her use of prescription pain medications, the court declines to find the ALJ's error harmless. Therefore, remand is warranted for the Commissioner to properly consider White's pain testimony in accordance with the regulations.

## VI. CONCLUSION

The court concludes that the ALJ failed to apply the proper legal standards in his consideration of the opinions of White's treating physician, Dr. Sahawneh, and failed to properly consider White's pain testimony in accordance with the

17

regulations. Therefore, the decision of the Commissioner will be reversed and the case remanded to the Commissioner to make a disability determination in accordance with the proper legal standards.  The court will enter an appropriate order.

Done the 31st day of March, 2014.


_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE